**In re the Marriage of Daniel Charles MURPHY, petitioner, Appellant,**

v.

**Sandra Marie MURPHY, n/k/a Sandra Beck, Respondent.**

No. C1–97–1148.

Court of Appeals of Minnesota.

Jan. 27, 1998.

Barry W. McKee, Stillwater, for appellant.

Sandra Beck, Center City, pro se.

Susan E. Gaertner, Ramsey County Attorney, Eleni P. Skevas, Assistant Ramsey County Attorney, for respondent Ramsey County.

Hubert H. Humphrey, III, Attorney General, Peter B. Hofrenning, Assistant Attorney General, for amicus curiae Minnesota Department of Human Services.

Considered and decided by SHORT, P.J., and KALITOWSKI and PETERSON, JJ.

## OPINION

SHORT, Judge.

On appeal from an order establishing his child support obligation based on imputed income, Daniel Charles Murphy argues the state's interest in collecting support is not compelling enough to justify burdening his constitutionally protected right to exercise his religion.

## FACTS

Since 1974, Murphy has been an active member of Christ's Household of Faith Church (church). As a requirement of church membership, persons must live in a communal society and work full-time within the religious community. Although the church permits members to hold jobs outside the church, such employment may only be part-time and must not interfere with church activities.

In 1975, Murphy married Sandra Beck in the church. From 1975 until 1993, the couple lived and raised their children in the religious community. In 1993, Beck left Murphy and removed their five youngest children from the religious community. By judgment and decree, Beck was awarded custody of the parties' five youngest children. *See Murphy v. Murphy,* No. C0–95–1363, 1996 WL 70978 (Minn.App. Feb.20, 1996) (affirming trial court award of custody). The issue of child support was reserved.

Since 1994, Beck and the children have received public assistance. At a hearing on Ramsey County's motion to establish child support, Murphy testified: (1) he has never been paid for work performed for church businesses; (2) the church provides him with housing, transportation, phone service, and a stipend of $78.40 per month; (3) Beck and their children would be entitled to similar church benefits if they lived within the religious community; (4) his income from part-time pizza delivery work is $180 per month; (5) he intends to continue the lifestyle established during the parties' 20-year marriage; and (6) he is willing to pay child support based on his actual income. The administrative law judge (ALJ) rejected Murphy's constitutional arguments, imputed a $12 hourly wage after considering the average local salary available for secular employment and Murphy's absence from the marketplace, and ordered Murphy to pay child support of $668 per month. Murphy moved for "reconsideration." Finding a basis for the motion under Minn. R. Civ. P. 52, the ALJ amended the findings, conclusions, and order by including, among other things, a finding that Murphy was "voluntarily unemployed and underemployed as those terms are defined by the statute," and denied the motion.

## ISSUES

I. Does the application of Minn. Stat § 518.551, subd. 5b(d) (1996) to Murphy violate the religious protections afforded by the First Amendment to the United States Constitution or article I, section 16 of the Minnesota Constitution?

II. If application of the state statute to Murphy is constitutional, did the ALJ abuse its discretion in establishing Murphy's child support obligation?

## ANALYSIS

One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979). We will uphold a statute unless the challenging party demonstrates a constitutional infirmity beyond a reasonable doubt. *Estate of Jones by Blume v. Kvamme,* 529 N.W.2d 335, 337 (Minn.1995). The constitutionality of a statute is a question of law, which we review de novo. *Id.*

The traditional standard for reviewing a trial court's decision applies to the decision of an administrative law judge in dissolution cases. Minn.Stat. § 518.5511, subd. 4(h) (1996); *Lee v. Lee,* 459 N.W.2d 365, 368–69 (Minn.App.1990), *review denied* (Minn. Oct. 18, 1990). A trial court has "broad discretion" in setting child support, and we will not reverse an exercise of that discretion absent a "clearly erroneous conclusion that is against logic and the facts on

record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).

The primary question presented on appeal is whether the state can impute income to an obligor who, as part of a sincerely held religious belief, lives and works in a religious community. Minn.Stat. § 518.551, subd. 5b(d) (1996) applies to Murphy unless a constitutional limitation prevents such application.

### I.

Murphy argues setting child support in an amount in excess of his actual income violates his constitutionally protected right to exercise his religion. Because of differences in the conscience clauses of the federal and state constitutions, we must analyze Murphy's claims under both constitutions. *See State v. Hershberger,* 462 N.W.2d 393, 397 (Minn.1990) (concluding Minnesotans afforded greater protection for religious liberties under state constitution than under federal constitution); *see generally* Tracey Levy, *Rediscovering Rights: State Courts Reconsider the Free Exercise Clauses of Their Own Constitutions in the Wake of Employment Division v. Smith,* 67 Temp. L.Q. 1017, 1037–40 (1994) (discussing Minnesota Supreme Court's analysis of state constitution's free exercise clause).

#### A. Federal Constitution

■ The First Amendment to the United States Constitution prohibits Congress from interfering with the free exercise of religion. U.S. Const. amend. I. That amendment applies to the states by virtue of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The right to believe as one wishes and to practice that belief according to the dictates of conscience, without violating the personal rights of others, is fundamental to our system. *See Sherbert v. Verner,* 374 U.S. 398, 402–03, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963) (holding door of free exercise clause stands tightly closed against any governmental regulation of religious beliefs, but government may regulate conduct that poses substantial threat to public safety, peace, or order). However, a law of general application that is not intended to regulate religious beliefs or conduct does not contravene the Free Exercise Clause if it incidentally infringes on religious practices. *See Employment Div., Dep't of Human Resources v. Smith,* 494 U.S. 872, 890, 110 S.Ct. 1595, 1606, 108 L.Ed.2d 876 (1990) (holding members of Native American religion who smoked peyote as part of ritual ceremony not exempt from general criminal ban on substance); *United States v. Lee,* 455 U.S. 252, 261, 102 S.Ct. 1051, 1057, 71 L.Ed.2d 127 (1982) (holding Amish employer must pay social security taxes despite religious prohibition against participation in government support programs); *Reynolds v. United States,* 98 U.S. 145, 166–67, 25 L.Ed. 244 (1878) (holding Mormons not exempt from laws prohibiting polygamy).

■ There is no dispute Minn.Stat. § 518.551, subd. 5b(d) is a valid law of general application, which regulates neither religious beliefs nor conduct. The statute contemplates parents of all religions will support their children. Murphy agrees he can contribute to his children's support, even though the children now reside outside the religious community, without violating any requirement of his religion. *Cf. Hunt v. Hunt,* 162 Vt. 423, 648 A.2d 843, 850–51 (1994) (finding child support order burdened religious beliefs where community forbade members from supporting family living outside community). Under these circumstances, the application of Minn.Stat. § 518.551, subd. 5b(d) to Murphy does not violate the Free Exercise Clause of the federal constitution. To hold otherwise would confer on Murphy "a private right to ignore generally applicable laws." *Smith,* 494 U.S. at 886, 110 S.Ct. at 1604.

#### B. State Constitution

■ The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own conscience shall never be infringed; * * * nor shall any control of or interference with the rights of conscience be permitted.

Minn. Const. art. I, § 16. This language is broader and more emphatic than the religion clauses of the First Amendment to the United States Constitution. *Hershberger,* 462 N.W.2d at 397. While the First Amendment limits government action at the point of prohibiting the exercise of religion, section 16 precludes even an infringement on or interference with religious freedom. *Id.* Section 16 also limits the governmental interest that may outweigh religious liberty. *Id.* To excuse an imposition on religious freedom under the Minnesota Constitution, the government's interest must be one of peace or safety or an interest against an act of licentiousness. Minn. Const. art. I, § 16. Only religious practices that are licentious or inconsistent with peace or safety are denied an exemption. *State by Cooper v. French,* 460 N.W.2d 2, 9 (Minn.1990). When reviewing a party's claim under article I, section 16 of the Minnesota Constitution, courts ask whether: (1) the objector's belief is sincerely held; (2) the state regulation burdens the exercise of religious beliefs; (3) the state interest in the regulation is overriding or compelling; and (4) the state regulation uses the least restrictive means for effectuating its compelling interest. *Hill–Murray Fed'n of Teachers v. Hill–Murray High Sch.,* 487 N.W.2d 857, 865 (Minn.1992).

▆▆▆ The Department of Human Services, as amicus curiae, argues Murphy failed to demonstrate working outside the religious community would violate a sincerely held religious belief. That argument is without merit. The record demonstrates: (1) Murphy has been a church member since 1974; (2) he married in the church, baptized his children in the church, and lived with his family in the church until Beck left him in 1993; (3) Murphy works five-day weeks for church businesses, unless additional weekend work is required; (4) his work day consists of eight-hour shifts; and (5) to pay a child support obligation that is based on imputed income, Murphy believes would "force me out of my religious life and force me into a [secular] job." Given these undisputed facts, we conclude Murphy has a sincerely held religious belief that precludes him from substantial employment outside his religious community. *See id.* (cautioning while proper

for court to inquire whether religious belief held in good faith, not province of court to examine reason for religious beliefs or to resolve purely religious disputes). Moreover, ordering Murphy to pay a support obligation that he will be unable to pay without taking a secular job will impose on his exercise of religious beliefs or cause him to risk penalties for nonpayment of support. *See Hunt,* 648 A.2d at 850–51 (applying test similar to that adopted in *Hill–Murray* and holding "[a] state imposed obligation that indirectly compels [a support obligor] to risk significant penalties if he chooses to adhere to his faith creates a substantial free exercise burden").

Murphy argues the governmental interest of promoting the general welfare by collecting child support is not authorized by the peace-safety-licentiousness provision of article I, section 16. However, the purpose of child support laws is to ensure an orderly process by which non-custodial parents' ability to provide for the economic support of their children is assessed, and their obligation to pay an established amount is set. *See* Minn.Stat. § 518.17 (1996) (providing factors court examines when determining support amount); *Lieder v. Straub,* 230 Minn. 460, 463, 42 N.W.2d 11, 13 (1950) (providing purpose of Minn.Stat. § 518.17 to insure support for children during minority); *see also Desrosier v. Desrosier,* 551 N.W.2d 507, 509 (Minn.App.1996) (recognizing public policy favors setting child support at specific amount). That process reduces disputes between estranged parents about support, promotes the safety of children by providing some security that a child's economic needs are met, and ensures cooperation between parents and government when public assistance is necessary to meet the needs of children. *See Schaefer v. Weber,* 567 N.W.2d 29, 33 (Minn.1997) (noting strong state policy of assuring children have adequate and timely economic support from their parents); *County of Nicollet v. Larson,* 421 N.W.2d 717, 720 (Minn.1988) (concluding only when parent does not provide for child should government step in); *Tammen v. Tammen,* 289 Minn. 28, 30, 182 N.W.2d 840, 842 (1970) (concluding minor children have basic right to support

from their parents and that in matters of support, paramount concern is welfare of children).

We hold the state has a compelling interest in assuring parents provide primary support for their children. *See* Minn. Stat. § 518.551, subd. 5 (1996) (providing court may order either or both parents owing duty of support to child to pay amount reasonable or necessary for child support); *Mund v. Mund,* 252 Minn. 442, 445, 90 N.W.2d 309, 312 (1958) (concluding obligation of parents to support their children derives from legal and natural duty); *see also Walton v. Walton,* 789 S.W.2d 64, 67 (Mo.Ct.App. 1990) (concluding utmost importance for state to maintain system that strives for orderly and civilized dissolution of family unit); *Berry v. Berry,* 95 Or.App. 433, 769 P.2d 786, 787 (1989) (concluding compelling state interest to require parents to support their children); *Hunt,* 648 A.2d at 851 (concluding parental support of children constitutes compelling state interest). That interest, grounded on moral, legal, and statutory obligations, is authorized by article I, section 16. However, state imposition on a person's religious rights must be accomplished by the least restrictive means of effectuating the state's compelling interest. *Hill–Murray Fed'n of Teachers,* 487 N.W.2d at 867.

Murphy argues imputing income from secular employment is not the least restrictive means of setting and collecting child support from him. *See Hill–Murray Fed'n of Teachers,* 487 N.W.2d at 867 (concluding Minnesota Constitution dictates state must, where possible, achieve compelling interest through application of least restrictive means); *Hershberger,* 462 N.W.2d at 399 (adopting balancing test to weigh state's compelling interest against infringement on religion and determining state must demonstrate compelling interest cannot be achieved through reasonable alternative means). Unfortunately, we are unable to analyze this prong of the balancing test because of the inadequacy of the record. Although a salary survey suggests Murphy could make $18.06 per hour in a secular job, the record does not demonstrate: (1) the value of in-kind benefits received by Murphy; (2) if Murphy could work

additional "moonlighting" hours per month without interfering with church activities; (3) the value of income that flows from Murphy's services to church businesses; and (4) the standard of living established during the parties' 20-year marriage. *See* Minn.Stat. § 518.551, subd. 5(c) (1996) (enumerating factors, in addition to child support guidelines, court should consider in setting or modifying child support). Because the record fails to establish the ALJ considered not imputing income based on secular employment, or imputing a lesser amount or a downward deviation from the guidelines due to the standard of living established during the marriage, we are unable to determine whether imputing income in the amount of $12 per hour to Murphy is the least restrictive means of effectuating the state's compelling interest in assuring Murphy provide primary support for his minor children.

## II.

The county argues the ALJ did not abuse its discretion by setting child support on the basis of imputed income where the ALJ found the obligor "voluntarily unemployed and underemployed." However, there must be evidence of choice in the matter of underemployment before income can be imputed under Minn.Stat. § 518.551. *See Franzen v. Borders,* 521 N.W.2d 626, 629 (Minn.App.1994) (concluding imputation of income appropriate if support obligor chose to be unemployed or underemployed). Significantly, there is no finding of a recent voluntary change in the obligor's status. *See Ferguson v. Ferguson,* 357 N.W.2d 104, 108 (Minn.App.1984) (concluding trial court correctly imputed income where support obligor recently changed employment status).

Minn.Stat. § 518.551, subd. 5b(d) provides in relevant part:

Imputed income means the estimated earning ability of a parent based on the parent's prior earnings history, education, and job skills, and on availability of jobs within the community for an individual with the parent's qualifications. If the court is unable to determine or estimate the earning ability of a parent, the court may calculate child support based on full-

time employment of 40 hours per week at the federal minimum wage or the Minnesota minimum wage, whichever is higher.

\* \* \*

Minn.Stat. § 518.551, subd. 5b(d) (1996). Due to the inadequacy of the record, we are unable to review the ALJ's discretionary act in setting Murphy's child support obligation. We are compelled to remand for consideration of the issue of "choice in the matter of underemployment" in light of Murphy's prior earnings history, and the standard of living established during the parties' 20–year marriage. Certainly, Beck is free to exercise her conscience by moving her family away from the religious community and the parties' minor children are entitled to support from their parents. However, to sustain the ALJ's order, which is based on one secular employment survey without regard to the marital standard of living or Murphy's in-kind benefits, earnings history, or contributed income to church businesses, would corrupt the statutory concept of imputed income. Under these circumstances, we conclude the ALJ abused its discretion in establishing Murphy's child support obligation and remand for proceedings consistent with this opinion.

## DECISION

The state has a compelling interest in assuring that parents provide primary support for their children. Due to the inadequacy of the record, however, we cannot say imputing $12 per hour to Murphy is the least restrictive means to effectuate the state's compelling interest. The ALJ abused its discretion in establishing Murphy's child support obligation without regard to the marital standard of living or Murphy's in-kind benefits, earnings history, or contributed income to church businesses.

**Reversed and remanded.**