**Rodney LeVAKE, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT # 656; Keith Dixon, Superintendent; Dave Johnson, Principal; and Cheryl Freund, Curriculum Director, Respondents.**

**No. C8–00–1613.**

Court of Appeals of Minnesota.

May 8, 2001.

Wayne B. Holstad, St. Paul, MN, for appellant.

Kay Nord Hunt, Ehrich L. Koch, Sheila Bjorklund, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondents.

Considered and decided by PETERSON, Presiding Judge, SHUMAKER, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge *

Appellant, a high school science teacher, challenges the district court's summary judgment in favor of respondents school district, superintendent, principal, and curriculum director. Appellant argues that he presented a genuine issue of material fact precluding summary judgment on the issue of whether respondents violated his rights of free exercise of religion, free

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to     Minn. Const. art. VI, § 10.

speech, and due process by reassigning him to teach a different class after discovering that appellant wanted to teach criticisms of evolution. Appellant also argues that the district court erred by excluding a portion of his deposition testimony as hearsay and considering a videotaped interview of appellant. Because appellant refused to teach his assigned class in the manner prescribed by the established curriculum, we conclude that he did not present any genuine issue of material fact, and we affirm.

## FACTS

In 1984, appellant Rodney LeVake was hired by respondent Independent School District # 656 as a high school science and math teacher. According to LeVake's contract, he could be assigned to teach any topic for which he has licensure. During the summer of 1997, LeVake was offered a position to teach tenth-grade biology for the 1997–98 academic year. Before accepting the position, LeVake met with Ken Hubert, co-chairman of the high school science department, and Dave Johnson, the high school principal, to discuss the course and its curriculum requirements. As part of the tenth-grade biology course, LeVake was required to teach evolution. The curriculum for the course is governed by the "Biology Program Curriculum Proposal" (the proposal) and the "Course Syllabus" (the syllabus). The proposal states that upon completion of the class, students will be able to understand that evolution involves natural selection and mutations, which constantly cause changes in living things. In the required course book for the biology class, three chapters dealt with evolution but only one was required as part of the curriculum. None of the chapters addressed alternative theories to or criticisms of evolution. The syllabus provided examples of topics that should be covered in class, which included evolution. Minnesota's high school graduation standards do not specifically refer to evolution; rather, the standards provide that a student must demonstrate an understanding of biological change over time. Minn. R. 3501.0446, subp. 2 (1999).[1]

LeVake accepted the position and began teaching the class with full knowledge of the curriculum requirements. In spring 1998, when LeVake arrived at the evolution component of the course, he spent only one day covering the topic, which included a correlating lab. The school year was cut short that year, so none of the other biology teachers spent a significant amount of time teaching the evolution chapters either. Hubert expressed concern to Johnson that LeVake did not adequately cover evolution and also discussed the situation with LeVake. LeVake essentially told Hubert that he could not teach evolution according to the prescribed curriculum. On April 1, 1998, LeVake met with Hubert, Johnson, and Cheryl Freund, the curriculum director, to discuss the issue. LeVake indicated that he did not regard evolution as a viable scientific concept. At that time, Freund asked if LeVake mentioned God or the Bible in class because she wanted to be sure that LeVake was not discussing religion in a manner that would give the impression that the school was not religiously neutral.

On April 7, 1998, LeVake, Hubert, Johnson, Freund, and the rest of the high school's science department met to discuss LeVake's teaching methods. At that meeting Johnson asked LeVake to write a position paper on how he proposed to

---

1. If there is to be any change in the required standards, the suggested change should be addressed to the school board and, if necessary, to the state legislature and tested by constitutional limitation.

teach evolution in his biology class. Le-Vake completed this paper on April 15. In his paper, LeVake articulated that he believes evolution is impossible from a "biological, anatomical, and physiological standpoint" and that there is "no evidence to show that it actually occurred." LeVake's paper also contends that the "complexity of life that we see around us is a testimony that evolution, as it is currently being handled in our text, is impossible." LeVake concludes by writing:

> I don't believe an unquestioning faith in the theory of evolution is foundational to the goals I have stated in teaching my students about themselves, their responsibilities, and gaining a sense of awe for what they see around them. I will teach, should the department decide that it is appropriate, the theory of evolution. *I will also accompany that treatment of evolution with an honest look at the difficulties and inconsistencies of the theory without turning my class into a religious one.*

(Emphasis added.)

On April 28, 1998, after meeting with the school district's lawyers and consulting with Freund and others, Johnson decided that LeVake should be reassigned to teach ninth-grade natural science for the following academic year. LeVake was informed of this decision the following day. As the basis for the school's decision, Johnson expressed concern that a basic concept of biology, meaning the theory of evolution, would be diluted and that students would "lose the gist" of the theory.

LeVake appealed his reassignment to Superintendent Keith Dixon. On May 14, 1998, Dixon wrote LeVake a letter, affirming his reassignment. Dixon believed that LeVake differed fundamentally with the "commonly held principles of the curriculum as outlined." Dixon further articulated that LeVake's insistence on teaching the inconsistencies of evolution was not an appropriate method for teaching the approved curriculum.

On May 24, 1999, LeVake filed a lawsuit against respondents Independent School District # 656, Keith Dixon, Dave Johnson, and Cheryl Freund (respondents). Based on 42 U.S.C. § 1983, LeVake alleged that respondents violated his right to free exercise of religion, free speech, due process, freedom of conscience, and academic freedom. Respondents moved for summary judgment, which the district court granted. The district court dismissed all of LeVake's claims with prejudice on the merits. LeVake now appeals from the district court's grant of summary judgment.

## ISSUES

1. Did appellant raise a genuine issue of material fact as to whether respondents' decision to assign appellant to teach a different class violated his right to free exercise of religion?

2. Did appellant raise a genuine issue of material fact as to whether respondents' decision to assign appellant to teach a different class violated his right to free speech?

3. Did appellant raise a genuine issue of material fact as to whether respondents' decision to assign appellant to teach a different class violated his due process rights by failing to provide him with notice that his method of teaching a high school biology course was inconsistent with the school board's established curriculum?

## ANALYSIS

On appeal from summary judgment, a reviewing court asks (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). No

genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. A genuine issue for trial must be established by substantial evidence. *Id.* at 70. A reviewing court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

## I. Free Exercise of Religion

■ The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment applies to the states by virtue of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

> The right to believe as one wishes and to practice that belief according to the dictates of conscience, without violating the personal rights of others, is fundamental to our system.

*Murphy v. Murphy,* 574 N.W.2d 77, 80 (Minn.App.1998) (citation omitted). If a law of general application "incidentally infringes on religious practices," it does not contravene the free exercise clause. *Id.* (citation omitted). The party asserting a free exercise violation has the initial burden of proving that the state's requirement imposes a burden on the party's religious belief or practice. *Abington Sch. Dist. v. Schempp,* 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963).

■ It is unclear on what basis LeVake argues that his right to free exercise of religion was violated. LeVake does not contend that respondents prohibited him from practicing the religion of his choice. He does not assert that respondents demanded that he refrain from practicing his religion outside of the scope of his duties as a public school teacher in order to retain his teaching position, and he does not assert that the curriculum requirements incidentally infringed on his religious practice. *Cf. Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988) (stating educators do not offend First Amendment so long as their actions are reasonably related to pedagogical concerns).

By analogy, LeVake focuses on employment discrimination cases to argue that circumstantial evidence of discrimination based on his religious belief exists, and he concludes that this alleged discrimination equates to respondents' violation of his right to free exercise of religion. *See Sigurdson v. Isanti Co.,* 386 N.W.2d 715, 720 (Minn.1986) (setting out standard for showing circumstantial evidence of employment discrimination). But LeVake did not bring an employment discrimination action, and he has not provided authority demonstrating how use of this standard raises a genuine issue of material fact regarding his free exercise claim. Consequently, he has not articulated how an argument based on religious discrimination equates to a violation of his right to free exercise of religion.

■ Finally, we address LeVake's complaints regarding the evidence that the district court considered in deciding the summary judgment motion. LeVake first argues that the district court erred in failing to consider his deposition testimony as to statements made by Freund, the curriculum director, regarding the reason for

LeVake's reassignment. But, LeVake has not shown that these statements create a genuine issue of material fact as to his free exercise claim. Freund's position as the curriculum director did not give her authority to hire, fire, or reassign LeVake, so her opinion on the matter is irrelevant. Principal Johnson had sole authority to reassign LeVake, and Superintendent Dixon had authority to overrule Johnson's decision. Thus, it was Johnson's reason for reassigning LeVake and Dixon's reason for supporting the decision that were germane.

LeVake also disputes the district court's consideration of a CNN video segment, which featured LeVake and others discussing the debate about evolution and creationism. But, he presents no issue for us to decide because the district court found that the tape had "little evidentiary value because it was created and aired almost two years after [LeVake's] reassignment and thus [did] not address the main issue" of the case.

Given respondents' important pedagogical interest in establishing the curriculum and its legitimate concern with ensuring that the school remained religiously neutral, we conclude that LeVake has not presented a genuine issue of material fact as to whether respondents' decision to assign him to teach a different class violated his right to free exercise of religion.

## II. Free Speech

Determining a public employee's free speech rights is a difficult task. A reviewing court must analyze the

> balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Finch v. Wemlinger*, 361 N.W.2d 865, 870 (Minn.1985) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). Further, critical to determining if a public employee's speech is entitled to protection, is whether the speech is "made primarily in the [employee's] role as a citizen or primarily in his role as an employee." *Terrell v. University of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). LeVake has the burden of showing that "his conduct was constitutionally protected, and that this conduct was a substantial factor or * * * motivating factor" in respondents' decision to reassign him. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (citation omitted).

LeVake argues that respondents reassigned him to silence his criticism of evolution, which infringed upon his rights of free speech and academic freedom. He asserts that the material he wants to teach his students is lawful and does not impinge on any important state interests.

The classroom is a "marketplace of ideas," and academic freedom should be safeguarded. *Keyishian v. Board of Regents*, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967). But Levake, in his role as a public school teacher rather than as a private citizen, wanted to discuss the criticisms of evolution. LeVake's position paper established that he does not believe the theory of evolution is credible. Further, LeVake's proposed method of teaching evolution is in direct conflict with respondents' curriculum requirements. *See Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir.1972) (recognizing teacher had no First Amendment right to override judgment of superiors regarding proper course content). Accordingly, the established curric-

ulum and LeVake's responsibility as a public school teacher to teach evolution in the manner prescribed by the curriculum overrides his First Amendment rights as a private citizen. *See Webster v. New Lenox Sch. Dist. No. 122,* 917 F.2d 1004, 1007 (7th Cir.1990) (recognizing compelling state interest in choice and adherence to suitable curriculum for benefit of young students overrides individual teachers' desire to teach what they please).

Based on LeVake's belief that evolution is not a viable theory, respondents' concern about his inability to teach the prescribed curriculum was well-founded. Thus, the district court did not err in granting respondents' motion for summary judgment because LeVake did not demonstrate a genuine issue of material fact regarding his claim that respondents violated his right to free speech.

### III. Due Process

■■■■■ For a procedural due process claim, a teacher must establish that the school administration's action to which the teacher is objecting deprived the teacher of a constitutionally protected liberty interest. *See Board of Regents v. Roth,* 408 U.S. 564, 568–75, 92 S.Ct. 2701, 2704–08, 33 L.Ed.2d 548 (1972) (concluding university did not violate nontenured teacher's protected liberty interest by deciding not to re-employ him without stating its reasons or providing hearing). Rights to free speech and free exercise of religion are protected liberty interests. *City of Boerne v. Flores,* 521 U.S. 507, 519, 117 S.Ct. 2157, 2163, 138 L.Ed.2d 624 (1997). The school board may regulate a teacher's speech in the classroom if it has provided the teacher with specific notice of what conduct is prohibited. *See Keyishian,* 385 U.S. at 604, 87 S.Ct. at 684 (stating government must clearly inform teachers of types of prohibited classroom speech).

■■■ LeVake's due process claim is premised on his belief that respondents deprived him of his liberty interest to teach his class free "from state action which impinges upon and violated his constitutional rights to free speech and free exercise" by failing to provide him with adequate notice of what types of expression were prohibited before reassigning him.

The cases LeVake relies on in making this argument involve the termination of teachers, but LeVake was not terminated. In fact, he was not even demoted. Further, before accepting the position to teach tenth-grade biology, LeVake understood that respondents' prescribed curriculum included teaching students about evolution.

LeVake was given sufficient notice about what he could and could not teach through the established curriculum and the syllabus. In addition, LeVake's contract specifically required him to "faithfully perform the teaching * * * *prescribed by the School Board,*" but LeVake articulated that he could not teach the class according to the existing curriculum requirements. (Emphasis added.) In fact, LeVake admitted in his deposition testimony that "in essence [he] said to [Hubert] that [*he could not*] *teach evolution.*" (Emphasis added.) Also, LeVake's position paper demonstrates that he does not believe that evolution is a credible theory. More importantly, LeVake's proposal of how he wanted to teach evolution conflicted with respondents' curriculum goals, which dictated that evolution should be taught as the *accepted* theory for how life has changed over time.

Thus, the district court did not err in granting respondents' summary judgment motion because LeVake did not demonstrate a genuine issue of material fact regarding his claim that his due process rights had been violated.

## DECISION

Because LeVake's position paper and his statement to Hubert make it clear that LeVake would not teach the required course curriculum in the manner established by the school board, LeVake has not presented any genuine issue of material fact regarding his free exercise, free speech, and due process claims. Thus, the district court did not err in granting respondents' motion for summary judgment.

**Affirmed.**