In re the MARRIAGE OF Laurel Ann CROCKARELL, n/k/a Laurel Ann March, petitioner, Respondent,

Ramsey County, Respondent,

v.

James L. Crockarell, Appellant.

No. C2–01–94.

Court of Appeals of Minnesota.

July 31, 2001.

Mark Nygaard, Nygaard & Longe, St. Paul, for respondent petitioner.

Susan Gaertner, Ramsey County Attorney, Amy A. Anderson, Assistant County Attorney, St. Paul, for respondent county.

John G. Westrick, Tammy L. Merkins, Westrick & McDowall–Nix, P.L.L.P., St. Paul, for appellant.

Considered and decided by HALBROOKS, Presiding Judge, SCHUMACHER, Judge, and WILLIS, Judge.

## OPINION

HALBROOKS, Judge

On appeal after remand in a contempt proceeding for failure to pay child-support arrearages, appellant alleges the district court erred by (1) drawing negative inferences from appellant's assertion of his Fifth Amendment rights, (2) finding appellant has access to assets which could be used to pay his obligations and meet the purge conditions, and (3) finding appellant in contempt without a court-ordered written payment plan. Because we conclude that the district court did not err, we affirm.

## FACTS

Appellant James Crockarell and respondent Laurel Ann March were married from 1975 to 1983. Upon dissolution, respondent was awarded physical custody of their two children. Appellant was ordered to pay child support at the rate of $350 per month for each child until age 12, at which point the rate would increase to $450 per month for that child. Each child's support was to continue until that child was 18 years old or no longer living with respondent and no longer dependent upon her for support.

During their marriage, the parties were in business together, buying, selling, and managing property. The dissolution process quickly became complicated and contentious. By the time of trial, appellant was already in arrears on child support.[1] Respondent brought a motion in 1996 seeking to have appellant held in contempt

---

1. Respondent challenged portions of the original dissolution judgment. *See March v. Croc-* *karell,* 354 N.W.2d 42, 47–48 (Minn.App. 1984), *review denied* (Minn. Jan. 10, 1985).

of court for nonpayment of child support. In May 1998, the district court found him in arrears in the amount of $91,404.86 plus interest for failing to pay his child-support obligations. The court rejected his claim that respondent's 1984 amended tax return of $58,559.26 should be credited to his child-support arrearage.

In October 1998, the district court issued amended findings and denied appellant's motion for a new trial. In June 2000, the court found that appellant had not made any child-support payments since July 1989, made material misrepresentations to the court, and failed to meet his burden of establishing his inability to pay child support. The district court found that, although appellant claims he has no assets, after the parties' dissolution, appellant had a net worth of over one million dollars. Appellant claims that he "cannot recall where all of the assets he had during the 1980s have gone to." The court also found that appellant is capable of earning income, has manipulated his finances so that his current wife receives compensation for his income-generating activities, and has intentionally misrepresented his financial situation in order to appear judgment-proof. The court found that appellant has the ability to pay child support and attorney fees and held him in contempt of court. The court ordered appellant to serve 180 days in the Ramsey County Workhouse, with execution of the sentence stayed so long as he paid child support and interest in the amount of $94,990.54 to respondent, attorney fees in the amount of $22,913.98 to Ramsey County, and $49,247.15 to respondent for attorney fees. The district court issued a judgment pursuant to the June 2000 order in favor of respondent and against appellant in the amount of $94,990.54 for child-support arrearages.

Appellant brought the June order to this court for review.[2] While that appeal was pending, respondent moved to enforce the contempt provisions of the order in a *Mahady* hearing. *See Mahady v. Mahady*, 448 N.W.2d 888 (Minn.App.1989) (laying out a two-stage proceeding in contempt proceedings). At the October 17, 2000 hearing, appellant, through his lawyer, asserted his Fifth Amendment right against self-incrimination and refused to testify. Appellant also argued that, because there was no court-ordered payment plan under Minn.Stat. § 518.617 (2000), he cannot be held in contempt. Finally, he argued that he does not have the ability to pay child support and that the district court cannot attach his current spouse's assets in order to satisfy his debt. The district court held that appellant's assertion of his Fifth Amendment right "unfairly prejudiced [respondent] because his financial condition, income, and his efforts to comply" with the support order are "peculiarly within [appellant's] own knowledge." Due to the unfair prejudice, the district court found it appropriate to strike appellant's claim that he does not have the ability to pay his arrearages. The district court rejected appellant's other arguments and reiterated that appellant had access to adequate assets to pay his child-support obligation. The court reaffirmed the order that appellant serve 180 days and set the following purge conditions in a December 2000 order: appellant must (1) pay his child support and interests in the sum of $94,909.54, (2) pay respondent's attorney fees and costs in the sum of $49,247.15, (3) pay attorney fees and costs to the Ramsey

2. On February 6, 2001, this court found that the district court abused its discretion when it converted the award of attorney fees to an additional judgment for child support but otherwise upheld the district court's decision. *See March v. Crockarell*, No. C1–00–1260, 2001 WL 96140 (Minn.App. Feb.6, 2001), *review denied* (Minn. Apr. 25, 2001).

County Attorney's office in the sum of $22,913.98, and (4) post a supersedeas bond. The sentence was stayed pending this appeal.

## ISSUES

1. Did the district court err in sanctioning appellant for his assertion of his Fifth Amendment rights by drawing adverse inferences against him?

2. Does Minn.Stat. § 518.617 (2000) require the court to establish a written payment plan before it may find an obligor in contempt?

3. Did the district court err in finding appellant had access to assets to pay his child-support arrearages?

4. Did the district court err in finding appellant has the ability to meet the purge conditions of the contempt order?

5. Should this court grant respondent attorney fees on appeal?

## ANALYSIS

■ Minnesota courts have statutory authority to enforce maintenance and child-support obligations using civil contempt proceedings. *Engelby v. Engelby*, 479 N.W.2d 424, 426 (Minn.App.1992). A child-support order constitutes prima facie evidence that the obligor has the ability to pay the award. Minn.Stat. § 518.24 (2000). Disobeying the award is prima facie evidence of contempt. *Id.* The obligor has the burden to prove inability to comply with the order. *Engelby*, 479 N.W.2d at 426.

■ The district court has broad discretion to hold an individual in contempt. *Erickson v. Erickson*, 385 N.W.2d 301, 304 (Minn.1986). This court reviews a district court's decision to invoke its contempt power under an abuse-of-discretion stan-

dard. *Mower County Human Servs. v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996). Factual findings of a contempt order will be reversed only if they are clearly erroneous. *Id.*; Minn. R. Civ. P. 52.01.

## I. Appellant's Refusal to Testify

■ In its December 2000 order, the court found that appellant's refusal to submit to cross-examination unfairly prejudiced respondent because the matters that appellant was asked to testify about—his finances, income, and efforts to comply with the support order—were peculiarly within appellant's own knowledge. Appellant argues that because his testimony may have exposed him to criminal liability for failure to pay child support and the information "could have been obtained through the use of documents," the district court erred in sanctioning him for his invocation of his Fifth Amendment rights. *See* Minn.Stat. § 609.375 (2000) (providing for criminal sanctions for the failure to pay child support).

■ The Fifth Amendment privilege against self-incrimination may be invoked if the testimony or information sought would have a tendency to incriminate the witness. *Minnesota State Bar Ass'n v. Divorce Assistance Assoc., Inc.*, 311 Minn. 276, 278, 248 N.W.2d 733, 737 (Minn.1976). The privilege applies in civil as well as criminal proceedings. *Parker v. Hennepin County Dist. Court, Fourth Judicial Dist.*, 285 N.W.2d 81, 82–83 (Minn.1979). But the function of the court in civil contempt proceedings is to make meaningful the rights of one party as against another. *Hopp v. Hopp*, 279 Minn. 170, 174, 156 N.W.2d 212, 216 (1968). Often, only the alleged contemnor can testify as to his or her "reasons for failure [to comply]." *Id.* Thus, a contemnor's failure to testify would warrant the court's drawing every inference against him. *Parker*, 285

N.W.2d at 83; *see also Bollenbach v. Bollenbach,* 285 Minn. 418, 428, 175 N.W.2d 148, 155 (1970) (stating that in dissolution proceedings, parties "must make a full and accurate disclosure of their assets and liabilities" and failure to do so "justifies inferences adverse to the party who conceals or evades."). The use of inferences is permissible because "[a]n adverse inference in a civil case cannot have any effect or be revealed in subsequent criminal proceedings." *Parker,* 285 N.W.2d at 83.

The district court relied on a similar case in deciding to draw adverse inferences against appellant. In *Engelby,* the obligor parent failed to comply with a support order and accrued arrearages. 479 N.W.2d at 426. The obligor then refused to testify about his employment by invoking his Fifth Amendment rights and the district court granted the motion to dismiss the contempt charges, finding that the obligee spouse had not sustained her burden to show that the obligor's failure to pay child support was willful. *Id.* This court reversed, finding that although the obligor had the right not the testify, the court "should have imposed an appropriate sanction to prevent unfair prejudice to [the obligee] resulting from [the obligor's] refusal to testify." *Id.* at 427.

Appellant attempts to differentiate *Engelby* by arguing that the participation of the county—which could have granted him immunity from prosecution—distinguishes this case from *Engelby.* But the distinction made by appellant is irrelevant to appellant's burden to demonstrate his inability to pay the child-support award. *Id.* at 426. Because he did not carry his burden, and his failure to testify unfairly prejudiced respondent, the district court properly sanctioned appellant by inferring his ability to pay his child-support arrearages.

In addition, despite appellant's assertion that documents could be used to verify his finances, the only document appellant submitted was a copy of his 1999 joint federal income-tax return. This is wholly inadequate to fully determine the issue of appellant's ability to pay his child-support obligation. *See Freking v. Freking,* 479 N.W.2d 736, 740 (Minn.App.1992) ("taxable income is not always a reliable indication of net income" for support purposes (citation omitted)); *see also Taflin v. Taflin,* 366 N.W.2d 315, 319 (Minn.App.1985) (party who failed to submit evidence to support his claim before district court could not object to district court's findings on appeal). Therefore, we conclude that the court correctly allowed appellant to invoke his Fifth Amendment rights and then properly drew an adverse inference from this invocation.

## II. Payment Plan

Appellant argues that Minn.Stat. § 518.617, subd. 1 (2000), compels the district court to create a written plan for payment of child-support arrearages and that only after an obligor violates the plan may the court find the obligor in contempt. Because no such plan existed in this case, appellant argues that the district court erred as matter of law in finding him in contempt.

Under Minnesota law,

[i]f a person against whom an order or decree for support has been entered * * * is in arrears * * * *and is not in compliance with a written payment plan* approved by the court * * * the person may be cited and punished by the court for contempt.

Minn.Stat. § 518.617, subd. 1 (emphasis added).

The object of all statutory interpretation and construction is to ascertain and effectuate the legislature's intention. Minn.

Stat. § 645.16 (2000). The legislature's intention may be ascertained by considering, among other things, the need for the law, the circumstances under which it was enacted, the consequences of an interpretation, contemporaneous legislative history, and the object to be attained. *Id.*

■ Appellant argues that the plain language of this statute—specifically the words "and not in compliance with a written payment plan"—requires that the district court must approve a payment plan before it can find an obligor in contempt for nonpayment of support. But the statute does not explicitly require a written payment plan, and other sections of this chapter specifically exclude a mandatory written payment plan before the finding of contempt. *See* Minn.Stat. § 518.551, subds. 13(d) (suspension of the driver's license of a person more than three months in arrears in child support is mandatory; if the arrears are at the statutory amount, the district court "shall order" the suspension *unless a payment plan has been established),* 12(d) (2000) (allowing for suspension of occupational license if the obligor is in arrears and has not executed *or is not in compliance with* a court-approved payment plan) (emphasis added).

Appellant's reading of the statute would force courts to create payment plans regardless of the amount in arrears. The statute simply says that a person who is three months in arrears and not in compliance with any payment plan that may be in existence, may be found in contempt. The statute guarantees that an obligor who is in compliance with a payment plan will not be found in contempt. To require a payment plan in all cases would insert a provision into the statute that the legislature did not put there. *See Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) (stating "[i]f there is to be a change in the statute, it must come from

the legislature"); *Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987) (stating "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court"), *review denied* (Minn. Dec. 18, 1987).

Moreover, Minnesota public policy dictates that the district court's ruling properly interprets the statute. "[T]he state has a compelling interest in assuring parents provide primary support for their children." *Murphy v. Murphy,* 574 N.W.2d 77, 82 (Minn.App.1998) (citations omitted). Child support laws are intended to "ensure an orderly process" to assess a non-custodial parent's ability to provide "economic support of their children." *Id.* at 81 (citations omitted). The additional step of a court-approved payment plan that appellant argues the statute requires, would further hinder the collection of child support from an already delinquent obligor. *See Schaefer v. Weber,* 567 N.W.2d 29, 33 (Minn.1997) (noting that there is a "strong state policy of assuring that children have the adequate and timely economic support of their parents," while simultaneously limiting "the unnecessary drain of scarce social service and judicial resources."). The failure of spouses and parents to make court-ordered support payments is a "serious social problem" and courts need to be provided with the tools to enforce these obligations. *Hopp,* 279 Minn. at 173, 156 N.W.2d at 216. Minn. Stat. § 518.617 (2000) was introduced and passed by the legislature within a larger bill designed to rectify the problem of nonpayment of child support. *See Hearing on S.F. 217 before the Senate Judiciary Subcommittee on Family Law* (Minn.1995) (statement of Senator Richard Cohen). Based on the language of the statute, the state's public policy, the harm to be remedied, and the context of the provision at issue, we conclude that Minn.Stat.

§ 518.617 does not mandate a court-approved payment plan before a court can find an obligor in contempt.

### III. Appellant's access to assets

■ Appellant argues that the district court erred in finding that he has assets to pay his outstanding child-support obligation. Appellant argues that the district court erred in finding he has the ability to pay his arrearages because any assets relied on by the court are his wife's property.

Appellant relies on *Overocker v. Solie,* 597 N.W.2d 579 (Minn.App.1999), to support his argument that the district court improperly relied on assets that are the property of his current wife in determining his ability to pay child-support arrearages. The *Overocker* court stated that a "judgment creditor cannot reach property held in the name of a corporation owned by the debtor's spouse," *id.* at 582, and found that any transfer made from husband to wife was "only the aggregate product of his continuous labor and services." *Id.* at 581. The court held that "[i]t is not fraud—or a fraudulent transfer—to donate services." *Id.* at 582. Appellant argues that the services he provides to his wife's assets do not give him an ownership right in the property. But the district court did not hold that appellant could afford to pay his child-support obligations because his donated services increased the value of his current wife's assets. Rather, the court found that appellant could pay his obligation because he transferred his own assets to his wife and has manipulated his finances to avoid his child-support obligation. Further, the district court found that appellant's efforts and expertise have helped to "generate or accumulate millions of dollars in property and assets for his wife and other business associates" while, at the same time, appellant has made no attempt to seek employment.

■ Appellant argues that his wife's assets are independent and separate from his own and cannot be used by the court to support a finding of his ability to pay his child support. *See* Minn.Stat. §§ 519.02 (providing that a woman maintains ownership rights over property she owned at the time of the marriage), 519.05 (2000) (providing that a spouse is not liable for the debts of the other spouse). But Minn.Stat. § 519.02 does not apply to property that a husband and wife acquire jointly during the marriage. *Abrahamson v. Abrahamson,* 613 N.W.2d 418, 422 (Minn.App.2000). Moreover, the record is devoid of evidence that the assets were brought to the marriage by appellant's current wife. Instead, the court found that since 1989, appellant has had the ability to pay child support and that he "intentionally manipulated his financial affairs so that his current wife * * * receives compensation for his income-generating activities."

> A party guilty of contempt may not purge himself by showing that he has voluntarily placed himself in a position where he is unable to conform to the court's order, when, * * * he has allowed the means of complying with that order to pass through his hands and out of his control.

*Ryerson v. Ryerson,* 194 Minn. 350, 351–52, 260 N.W. 530, 530–31 (1935).

■ Minnesota law creates a presumption that the obligor has an income sufficient to pay the support order and the order constitutes prima facie evidence that the obligor has the ability to pay the award. Minn.Stat. § 518.24. The obligor in a contempt proceeding has the burden to demonstrate an inability to pay the child-support award. *Hopp,* 279 Minn. at 174–75, 156 N.W.2d at 216–17. Appellant has presented no evidence to refute the court's finding regarding his manipulation of assets. Therefore, appellant has not

met this burden and the district court did not err in finding that he has the ability to pay his child-support arrearages.

## IV. Appellant's ability to meet purge conditions

Appellant argues that the district court erred in finding that he could meet the purge conditions because the only evidence presented at the hearing was his tax return and there were no specific findings about how appellant could access his wife's assets.

 Contempt law requires two hearings before a contemnor may be jailed. *Mahady v. Mahady*, 448 N.W.2d 888, 891 (Minn.App.1989). The present case involves the second stage of contempt proceedings in which the contemnor has the opportunity to show compliance or a good faith effort to comply with conditions stated when contempt was first adjudicated. *Id.* If the court finds that the contemnor failed to comply without excuse, it may order immediate confinement but still must set purge conditions that provide the contemnor the opportunity to obtain release by compliance. *Hopp*, 279 Minn. at 175, 156 N.W.2d at 217. For a purge condition to create an actual "opportunity" to gain release, there must be a determination that the contemnor has the ability to meet the purge condition. *Id.* (depicting obligation in civil contempt proceeding as within obligor's ability).

 The supreme court has consistently held that it is proper to look beyond an obligor's earnings to his earning capacity, and to disregard any inability to pay that is voluntary on the part of the obligor. *Hopp*, 279 Minn. 170, 156 N.W.2d 212; *Meisner v. Meisner*, 220 Minn. 559, 20 N.W.2d 486 (1945). If the obligor fails to make a good faith effort to conform to the contempt order, his burden is not sustained. *Hopp*, 279 Minn. at 175, 156 N.W.2d at 217; *see also Swancutt*, 551 N.W.2d at 222–23 (it "was well within its discretion to take into account [appellant's] history of blatant dereliction of his financial obligations to his children in fashioning its remedy"). Here, the court found that appellant has the ability to pay his child-support obligation. The child-support obligations are the same as his purge conditions. As discussed above, appellant has failed to carry his burden of proof.

The factual findings of a contempt order will be reversed only if they are clearly erroneous. *Swancutt*, 551 N.W.2d at 222. Moreover, there is no statutory requirement that the court determine how an obligor access the money necessary to meet the purge conditions, only that it determine the obligor is able to meet them. Because the court found that appellant has the ability to pay, and he has not carried his burden to prove otherwise, the district court did not err.

## V. Attorney Fees

Respondent requests that this court grant her attorney fees based on appellant's bad faith pursuit of this matter and his unwillingness to cooperate with court orders. Minn. R. Civ.App. P. 139.06 prescribes the proper procedure for seeking attorney fees on appeal. Such a request must be in the form of a motion and "include sufficient documentation to enable the appellate court to determine the appropriate amount of fees." Minn. R. Civ.App. P. 139.06, subd. 1. Respondent requested attorney fees in her brief, but has not put her request in the form of a motion. Although this court "may grant on its own motion an award of reasonable attorneys' fees," we do not find this to be an appropriate case for a sua sponte motion. *Id.* We, therefore, decline to address the merits of the request. We may, however, consider this issue upon a proper motion.

## DECISION

We affirm the district court's decision in its entirety. After allowing appellant to assert his Fifth Amendment rights in a civil contempt proceeding, the district court correctly drew adverse inferences to avoid harm to respondent. The district court also correctly found that a Minn. Stat. § 518.617 (2000) does not require a written payment plan before finding an obligor in contempt. Appellant may not lawfully conceal assets to avoid paying child support by placing them in his wife's name and asserting that they are her individual property. Therefore, the district court did not err in finding that appellant had access to assets to pay his child-support arrearages and the ability to meet the purge conditions.

**Affirmed.**