In re the Marriage of: Brian Michael
WELSH, petitioner, Respondent,

v.

Laura Lyn WELSH, Appellant,

and

Dakota County, intervenor,
Respondent.

No. A08–2277.

Court of Appeals of Minnesota.

Nov. 17, 2009.

Julie K. Seymour, Burnsville, MN, for appellant.

Brian Welsh, Shakopee, MN, pro se respondent.

James Backstrom, Dakota County Attorney, Lisa Kontz, Assistant County Attorney, Hastings, MN, for respondent Dakota County.

Considered and decided by WRIGHT, Presiding Judge; KALITOWSKI, Judge; and STONEBURNER, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from the district court's confirmation of a child support magistrate's order reducing respondent-father's child-support obligation, appellant-mother argues that the district court (1) misapplied Minn.Stat. § 518A.32, subd. 1, when, despite direct evidence of mother's income, the district court imputed potential income to mother; (2) overstated mother's gross income by including in it both her actual and potential income; (3) erred in its application of Minn.Stat. § 518A.32, subd. 5 (2008), when it found mother to be voluntarily unemployed despite her status as caretaker of the parties' children; and (4) erred by reducing father's child-support obligation because a correct determination of mother's gross income establishes that father's existing child-support obligation is not presumptively unreasonable and unfair. For the reason set forth below, we conclude that the district court correctly applied Minn.Stat. § 518A.32, subd. 1, to require consideration of actual and potential income when a parent is voluntarily unemployed and correctly determined that gross income can include both actual and potential income. But the district court did not apply Minn.Stat. § 518A.32, subd. 5, when addressing whether mother is voluntarily unemployed. We, therefore, affirm in part, reverse in part, and remand for the district court to reevaluate whether mother was voluntarily unemployed and whether to modify father's child-support obligation.

## FACTS

During the parties' marriage, they had twins in 1995, and appellant-mother Laura Welsh had limited employment outside the home. The stipulated 1999 judgment dissolving the parties' marriage awarded mother sole physical custody of the children and set the monthly child-support obligation of respondent-father Brian Welsh at $2,100. At an unspecified date, mother became the beneficiary of certain monthly payments from a trust. After the dissolution, father remarried and had a child with his new wife.

On January 1, 2007, the income-shares child-support guidelines became effective. An August 2007 cost-of-living adjustment of father's child-support obligation increased his monthly obligation to $2,600, retroactive to May 1, 2007.

In June 2008, father moved to reduce his child-support obligation, alleging that he had experienced increases in his expenses and mother had experienced increases in her income warranting modification. Mother opposed the motion. After a hearing on the motion, a child support magistrate (CSM) issued an order finding that mother's monthly trust income was $1,642.91 and that mother was voluntarily unemployed. The CSM also found that mother's potential monthly income was $1,702 in addition to her trust income and calculated mother's monthly gross income for child-support purposes to be $3,345. The CSM also found that father's monthly income was $13,705. Calculating father's presumptive net monthly child-support obligation under the income-shares child-support guidelines to be $1,896, the CSM found that father's obligation should be decreased by 27 percent, or $704 less than father's existing monthly obligation of $2,600. The CSM found that there was a substantial change in circumstances that rendered father's existing child-support obligation unreasonable and unfair and reduced father's child-support obligation from $2,600 to $1,896.

Mother sought review of the CSM's order by the district court, arguing that the CSM improperly included both her actual and potential income in her gross income. Rejecting mother's argument, the district court ruled that the CSM had properly calculated mother's gross income and affirmed the CSM's calculation of father's child-support obligation. This appeal followed.

## ISSUES

I. Did the district court misapply Minn. Stat. § 518A.32, subd. 1, when it imputed potential income to mother?

II. Did the district court overstate mother's gross income by including in it both her actual and her potential income?

III. Did the district court violate Minn. Stat. § 518A.32, subd. 5, when it found that mother was voluntarily unemployed despite her status as caretaker of the children?

IV. Did the district court err by ruling that father's existing child-support obligation was unreasonable and unfair?

## ANALYSIS

When a district court affirms a CSM's ruling, the CSM's ruling becomes the ruling of the district court, and we review the CSM's decision, to the extent it is affirmed by the district court, as if it were made by the district court. *See Kilpatrick v. Kilpatrick,* 673 N.W.2d 528, 530 n. 2 (Minn.App.2004) (explaining appellate review of CSM decisions).

Father's motion to reduce his child-support obligation was based on his allegations of mother's increased income and his own increased expenses. Critical

to this appeal, however, is the interpretation and application of Minn.Stat. § 518A.32, subds. 1, 5. When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2008). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). A statute's language is ambiguous only when its language is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). We construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980); *see also* Minn.Stat. § 645.08(1) (2008) (providing that words are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Anderson*, 683 N.W.2d 818, 821 (Minn. 2004).

## I.

■ "If a parent is voluntarily unemployed, underemployed, or employed on a less than full-time basis, or there is no direct evidence of any income, child support must be calculated based on a determination of potential income." Minn.Stat. § 518A.32, subd. 1. The district court ruled that, under this statute, it was "appropriate" to impute potential income to mother because it found her "voluntarily unemployed." Mother challenges the district court's imputation decision, arguing that the "direct evidence" of her trust income "relieve[d]" the district court of having to impute potential income to her. We conclude that the district court correctly construed Minn.Stat. § 518A.32,

subd. 1, as allowing imputation of potential income to mother despite the direct evidence of her income from the trust.

■ When construing a statute, "[w]ords and phrases should be construed according to the rules of grammar." *Woodhall v. State*, 738 N.W.2d 357, 361 (Minn.2007). Grammatically, the plain language of the first part of the sentence in question has two dependent clauses ("[i]f a parent is voluntarily unemployed, underemployed, or employed on a less than full-time basis" and "[if] there is no direct evidence of any income"). Those two dependent clauses are joined by the conjunction "or." Each dependent clause identifies a condition which, if satisfied, triggers the sentence's final independent clause ("child support must be calculated based on a determination of potential income"). Accordingly, if either dependent clause is satisfied, the independent clause, "child support must be calculated based on a determination of potential income," becomes applicable. Here, because the district court found mother to be voluntarily unemployed, it was required to consider mother's potential income, regardless of whether she produced direct evidence of her trust income.

A second rationale supports our construction of section 518A.32, subdivision 1. Absent context establishing that the word "or" should be read as a conjunctive, generally we read "or" to be disjunctive. *Amaral*, 598 N.W.2d at 385; *see Goldman v. Greenwood*, 748 N.W.2d 279, 283 (Minn. 2008) (stating that "we normally interpret the conjunction 'or' as disjunctive rather than conjunctive"). Indeed, the context of section 518A.32, subdivision 1, warrants a disjunctive reading of the word "or" joining the dependent clauses identifying the conditions that enable the requirement that the district court consider potential

income and precludes a conjunctive reading of the term. Reading the word "or" as disjunctive requires child-support awards to be set based on potential income if either (1) the parent is voluntarily unemployed, underemployed, or employed on less than a full-time basis or (2) there is no direct evidence of any income. This construction of the statute creates a rebuttable presumption that parents can work full time, and it is consistent with both the statute's plain language and the state's compelling interest in assuring that parents provide the primary support for their children. *See* Minn.Stat. § 518A.32, subd. 1 (stating that for purposes of calculating potential income "it is rebuttably presumed that a parent can be gainfully employed on a full-time basis"); *Murphy v. Murphy,* 574 N.W.2d 77, 82 (Minn.App. 1998) (discussing the state's compelling interest).

Reading the word "or" as *conjunctive* would require imputation of potential income only when a parent is voluntarily unemployed, underemployed, or employed on less than a full-time basis *and* the parent lacks direct evidence of income. But most parents who are underemployed or employed on less than a full-time basis have direct evidence of income, such as a paystub. If the word "or" is construed as mother asserts, parents seeking to partially avoid an otherwise appropriate child-support obligation would be permitted to voluntarily undertake partial employment at a job with direct evidence of income, thereby creating circumstances in which, despite the parent's voluntary underemployment or employment on less than a full-time basis, the district court would not be required to consider the parent's potential income. Reading the statute to permit this conduct would be contrary to both the *Murphy* court's holding that the state has a compelling interest in assuring that parents provide the primary support for their

children and the presumption required by Minn.Stat. § 645.17(1) (2008) that the legislature does not intend a statute to produce an absurd result. We, therefore, decline to read Minn.Stat. § 518A.32, subd. 1, in the conjunctive.

We also observe that our construction of section 518A.32, subdivision 1, is consistent with Oregon's interpretation of the Oregon Administrative Rule from which the relevant part of section 518A.32, subdivision 1, is derived. The relevant language was originally enacted in 2005 as part of an overhaul of the state's child-support statutes. *Compare* Minn.Stat. § 518A.32, subd. 1 (2008) (current provision) *with* 2005 Minn. Laws ch. 164, § 5, at 1885–86 (enacting the same disjunctive language). The legislative history of the 2005 amendments of the child-support statutes shows that the language stating that "[i]f a parent is voluntarily unemployed, underemployed, or employed on a less than full-time basis, or there is no direct evidence of any income, child support shall be calculated based on a determination of potential income" is derived from the mechanism used in Oregon to address a parent's potential income. Hearing on S.F. 630 before the S. Judiciary Comm. (Mar. 3, 2005) (comments of Sen. Neuville).

In Oregon,

[i]f a parent is unemployed, employed on less than a full time basis or there is no direct evidence of any income, the parent's income for purposes of the child support calculation is presumed to be the parent's potential income, except as provided in sections (2) and (3) of this rule.

Or. Admin. R. 137–050–0360(1) (2009). In a case involving a modification of child support of a "semi-retired" parent who earned "about $1,300 per month from his employment and ha[d] additional income of

about $200 per month[,]" the Oregon Court of Appeals ruled that the district court was to address whether a substantial change in circumstances existed, noting that if substantially changed circumstances existed, the district court was required, among other things, to "calculate father's gross income, *including any potential income*[.]" *In re Marriage of Nibler,* 184 Or.App. 23, 55 P.3d 529, 529, 531 (2002) (emphasis added). Thus, Oregon's rule is construed to require consideration of potential income even if a parent has direct evidence of the parent's current income. *See In re Marriage of Koch,* 110 Or.App. 497, 823 P.2d 442, 444 (1992) (stating that under Or. Admin. R. 137–050–0360(1), "there is a rebuttable presumption that *every parent* can be employed full-time at at least the minimum wage" (emphasis added; footnote omitted)).

Our construction of the statute is required by the statute's plain language, as well as by caselaw holding that "or" generally is read as disjunctive. It also is consistent with Oregon cases that have construed the Oregon rule on which the Minnesota statute is based. We, therefore, affirm the district court's interpretation of section 518A.32, subdivision 1, reading the statute to require consideration of potential income despite the fact that mother has direct evidence of her income from the trust.

## II.

■ When, under section 518A.32, a district court "must" determine a parent's potential income, it "must" do so by either estimating the parent's probable earnings based on the parent's employment history or using the parent's unemployment benefits, or calculating the amount that the parent would earn if the parent were working full time and receiving 150 percent of the current minimum wage. Minn. Stat. § 518A.32, subds. 1, 2 (2008). Recog-

nizing mother's limited work history and that mother receives no unemployment benefits, the CSM used the third option and added that amount of monthly potential income ($1,702) to mother's monthly trust income ($1,642.91) to find that mother's gross monthly income was $3,345. The district court adopted that calculation. Mother argues that the district court overstated her income by using the combined total of her actual and potential incomes as her gross income for child-support purposes.

To set a basic child-support obligation, the district court "shall," among other things, "determine the gross income of each parent under [Minn.Stat. § ] 518A.29 (2008)[.]" Minn.Stat. § 518A.34(b)(1) (2008). Subject to exclusions and deductions not at issue here, gross income includes "any form of periodic payment to an individual ... and potential income under section 518A.32." Minn.Stat. § 518A.29(a) (2008). Mother does not challenge the finding that she receives monthly distributions from the trust. Because these trust distributions are periodic, they are part of her gross income. Similarly, because gross income includes potential income in addition to periodic payments, potential income also is part of mother's gross income. We, therefore, affirm the district court's determination that gross income includes both actual and potential income, and we reject mother's argument to the contrary. Based on the same analyses, we also reject mother's alternative argument that the most that should have been imputed to her as potential income is the $59 difference between her trust income ($1,643) and her monthly potential income at 150 percent of the minimum wage ($1,702).

## III.

■ Mother challenges the finding that she is voluntarily unemployed, argu-

ing that because she is the caretaker of the parties' children, consideration of the factors listed in Minn.Stat. § 518A.32, subd. 5, establishes that she is not voluntarily unemployed. Whether a parent is voluntarily unemployed is a finding of fact, which we review for clear error. *See Putz v. Putz,* 645 N.W.2d 343, 352 (Minn.2002) (noting that "[t]he primary issue" on appeal was "whether the magistrate erred in finding that [father] was not voluntarily unemployed"); Minn. R. Civ. P. 52.01.

Section 518A.32, subdivision 5, lists factors that a district court may consider when addressing whether a parent who stays at home to care for a child who is the subject of a child-support order is voluntarily unemployed, underemployed, or employed on a less than full-time basis. Those factors are:

(1) the parties' parenting and child care arrangements before the child support action;

(2) the stay-at-home parent's employment history, recency of employment, earnings, and the availability of jobs within the community for an individual with the parent's qualifications;

(3) the relationship between the employment-related expenses, including, but not limited to, child care and transportation costs required for the parent to be employed, and the income the stay-at-home parent could receive from available jobs within the community for an individual with the parent's qualifications;

(4) the child's age and health, including whether the child is physically or mentally disabled; and

(5) the availability of child care providers.

Minn.Stat. § 518A.32, subd. 5.[1]

Although the parties relied on this statute in arguments before the district court, it was not cited in the district court's ruling. Rather, the district court found that, "[b]ecause the twins are 13 years old [ [2]], there is no basis to reduce imputed income due to caretaker responsibilities under Minn.Stat. § 518A.41, subd. 5 [ (2008) ]." It appears that this statutory provision was cited in error. Section 518A.41, subdivision 5, entitled "Medical support costs; unreimbursed and uninsured medical expenses[,]" addresses apportionment of medical-support costs between parents. It does not address the age of a child, the responsibilities of a caretaker, or the imputation of income. The statute cited by the district court is not relevant to its decision to impute income to mother. The relevant statutory provision is section 518A.32, subdivision 5, entitled "Caretaker," which directs a district court to consider "the child's age" when determining whether a caretaker is voluntarily unemployed for the purpose of imputing income to that caretaker.

The district court, however, did not make findings addressing the other factors in section 518A.32, subdivision 5. And we are without the authority to do so. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn. 1988); *Kucera v. Kucera,* 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966). Thus, even if the district court's reference to Minn.Stat. § 518A.41, subd. 5, is merely a typographical error and should have been a citation to Minn.Stat. § 518A.32, subd. 5, we must remand to the district court to

---

**1.** The statutory provisions of Minn.Stat. § 518A.32, subd. 3 (2008), that identify certain circumstances under which a parent is not voluntarily unemployed, underemployed, or employed on less than a full-time basis are not at issue here.

**2.** The twins are now 14 years old and will be 15 years old in April 2010.

apply the factors set forth in Minn.Stat. § 518A.32, subd. 5, and to determine whether mother's status as the caretaker of the parties' children precludes her from being found to be voluntarily unemployed. *See, e.g., Erickson v. Erickson,* 385 N.W.2d 301, 303 (Minn.1986) (stating that "[w]e cannot stress enough the importance of having findings of fact that demonstrate the trial court actually did take all relevant factors into consideration"); *Putz,* 645 N.W.2d at 353–54 (quoting and applying *Erickson* ); *Stich v. Stich,* 435 N.W.2d 52, 53 (Minn.1989) (remanding when district court's findings were insufficient to allow an appellate court to determine whether the relevant statutory requirements were properly considered).

### IV.

■ To obtain a modification of child support, a party must show that, since the existing child-support obligation was set, a substantial change in circumstances has rendered the existing obligation unreasonable and unfair. Minn.Stat. § 518A.39, subd. 2(a) (2008). If application of the child-support guidelines to an existing child-support obligation establishes that the presumptively correct monthly obligation is at least 20 percent and $75 different from the existing obligation, it is presumed that there has been a substantial change in circumstances, and there is an additional, rebuttable presumption that the existing obligation is unreasonable and unfair. *Id.,* subd. 2(b)(1) (2008). Here, based on its finding of mother's gross income, the district court found that there has been a substantial change in circumstances and that father's existing child-support obligation was unreasonable and unfair.

The district court's finding of mother's gross income was based on its finding that mother was voluntarily unemployed and the resulting imputation to her of potential income. Therefore, our remand for the district court to address whether mother's status as the children's caretaker precludes a finding that she is voluntarily unemployed affects both the finding of mother's gross income and the finding that father's existing child-support obligation is unreasonable and unfair. For this reason, on remand, the district court shall also reconsider whether there is a substantial change in circumstances rendering father's child-support obligation unreasonable and unfair. *See Rose v. Rose,* 765 N.W.2d 142, 146–47 (Minn.App.2009) (addressing impact of enactment of the income-shares child-support system on modification proceedings).

### DECISION

The district court correctly determined that direct evidence of mother's trust income does not preclude consideration of mother's potential income arising from the finding that she is voluntarily unemployed. The district court also correctly held that a parent's gross income for child-support purposes can include both actual and potential income. Therefore, we affirm these aspects of the district court's decision. Because the district court did not fully address the factors in Minn.Stat. § 518A.32, subd. 5, when considering whether mother's status as the children's caretaker precludes a finding that she is voluntarily unemployed, we remand for a ruling on that issue as well as whether a substantial change in circumstances exists that renders father's existing child-support obligation unreasonable and unfair. Whether to reopen the record on remand shall be discretionary with the district court.

**Affirmed in part, reversed in part, and remanded.**