*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1485
A14-0174**

Ramsey County, petitioner,
Respondent,

Laniesha M. Williams, petitioner,
Respondent,

vs.

Nathan D. Washington, Sr.,
Appellant

**Filed December 29, 2014
Affirmed
Huspeni, Judge**[*]

Ramsey County District Court
File No. 62-FA-10-943

John J. Choi, Ramsey County Attorney, Jenese V. Larmouth, Assistant County Attorney, St. Paul, Minnesota (for respondent Ramsey County)

Laniesha M. Williams, Minneapolis, Minnesota (pro se respondent)

Nathan D. Washington, Houston, Texas (pro se appellant)

Considered and decided by Rodenberg, Presiding Judge; Kirk, Judge; and Huspeni, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HUSPENI**, Judge

Appellant challenges the district court's decisions regarding physical custody, educational choices, parenting time, and child support, and asserts that the district court was biased in favor of respondent. Because the evidence in the record supports the thorough findings of the district court and those findings support the conclusions reached, and because there is no indication of bias in the record, we affirm.

## FACTS

Appellant Nathan D. Washington, Sr., and respondent Laniesha M. Williams are the parents of two children, NDW, D/O/B 4/19/04, and RNW, D/O/B 4/7/08. Washington and Williams were not married, but Washington admitted paternity. In 2011, Williams was granted sole physical custody of the children and the parties shared joint legal custody.

The parties participated in Social Early Neutral Evaluation (SENE) and agreed to joint legal and physical custody, with the stipulation that custody would be subject to review after six months and that the court would use a best-interests standard on review, rather than the more stringent modification standard of Minn. Stat. § 518.18 (2012). Because the parties had joint physical custody, neither party was ordered to pay basic child support, but they agreed to split equally NDW's private school tuition and the child-care costs. Each parent was responsible for the medical costs of one child.

In 2012, Williams moved for a modification of parenting time, arguing that Washington was not exercising his parenting time; she also asked for child support and

child-care support, because she was attending school and was not working. The parties were unable to reach a mediated resolution of these issues. After a hearing in August 2012, the district court refused to modify parenting time, but ordered Washington to pay basic child support of $628 per month; the district court did not order Washington to pay for child-care or medical support, a downward deviation from the support guidelines based on his monthly income of $3,000. The court imputed income to Williams of $314 per month. Washington argued that the district court had previously improperly ordered child-care support to be withheld from his paycheck based on the parties' earlier agreement to split child-care costs, and, therefore, he discontinued paying his part of the private school tuition.

At a review hearing in January 2013, Washington was still earning $3,000 per month, but had purchased a Hummer with monthly car payments of $514. The district court refused to deviate from the guidelines payments and ordered Washington to pay basic child support of $494 per month, child-care support of $200 per month, and medical support of $91 per month to Ramsey County. The parties were again unable to agree on the remaining issues, and, therefore, a hearing was held on the issues of legal and physical custody, child support, and school attendance.

The district court issued its order on June 13, 2013; this is one of the orders Washington is challenging in this appeal. The court analyzed the custody issues using the best-interests factors set forth in Minn. Stat. § 518.17, subd. 1, the standard the parties agreed to use in 2011. After a detailed analysis, the district court granted Williams sole physical custody; the primary reason for this was Washington's failure to exercise his

3

parenting time consistently. The district court granted Washington parenting time every other weekend and every other Thursday.

Because Williams was finishing her cosmetology schooling, the district court assigned her potential income of $693 per month as of September 1, 2013. Based on this imputed income, the district court ordered Washington to pay child support of $757 per month from April 1, 2013, until September 1, and $694 per month thereafter. He was ordered to pay $200 per month in child-care support until September 1, and $171 per month thereafter, and was also ordered to pay $91 per month for medical reimbursement. All amounts are based on the support guidelines using Washington's monthly salary of $3,000, and Williams's actual income of $693 per month until September 1, and her additional potential income of $693 per month after September 1, 2013.

The district court also addressed the issue of school attendance, noting that NDW was doing well at the private school, that his brother was well acquainted with the school, and that Williams had managed to cobble together the tuition payments with no assistance from Washington. The court ordered that the children attend the private school so long as Williams could afford the tuition; the court excused Washington from paying for the tuition and ordered the parents to mutually agree to a different school placement if Williams was unable to pay the tuition.

In August 2013, Washington moved to modify parenting time and support. He had quit his job and moved to Texas (where he was now unemployed), stating that he was unable to continue working in Minnesota because of the district court's June 2013 order, because his paycheck was garnished to pay the court-ordered support and arrearages, and

4

because he was unable to meet his expenses. He sought parenting time from two days after the end of the school year until one week before the beginning of the next school year, as well as the winter holiday vacation. He further requested that his child-support, child-care, and medical-support obligation be reduced to reflect his current lack of income.

The district court held a telephone hearing on Washington's August motion in October, and in a December 2013 order refused to modify support and ruled that Washington could continue to have parenting time in Minnesota, but not in Texas. In its determinations, the district court reasoned that Washington had voluntarily quit his employment and had failed to provide any information about his living conditions in Texas except that he was living with relatives. Washington appealed both the June 18 and the December 2, 2013 orders, and this court consolidated his appeals.

## D E C I S I O N

### I.

Washington argues that the district court abused its discretion and denied him his equal protection rights and his rights to life, liberty, and the pursuit of happiness under the federal constitution by granting sole physical custody of the parties' minor children to Williams.[1] We note initially that Washington's constitutional arguments are not well developed and we are unable to determine the basis for these arguments. *See State, Dep't*

---

[1] Respondent Ramsey County appears in this action because the children received public benefits; however, the county is arguing only issues of support. Williams has not filed a respondent's brief; therefore, the issues other than support raised by Washington "shall be determined on the merits." Minn. R. Civ. App. P. 142.03.

*of Labor and Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480. 480 (Minn. 1997) (stating that appellate court need not reach an issue in the absence of adequate briefing); *Carpenter v. Woodvale, Inc.*, 400 N.W.2d 727, 729 (Minn. 1987) ("While an appellant acting pro se is usually according some leeway in attempting to comply with court rules, he is still not relieved of the burden of, at least, adequately communicating to the court what it is he wants accomplished and by whom"). We, therefore, do not address his constitutional arguments, but will review the decisions of the district court as identified in the analysis of each issue Washington raises.

The district court's custody determinations are reviewed for an abuse of discretion. *Goldman v. Greenwood*, 748 N.W.2d 279, 281-82 (Minn. 2008). That discretion is abused when its findings are not supported by the evidence or when the law is improperly applied. *Id.* By agreement of the parties, the district court used the best-interests factors of Minn. Stat. § 518.17, subd. 1 (2012), rather than the modification standard of Minn. Stat. § 518.18 (2012). Section 518.17, subdivision 1, contains 13 factors for the district court to consider when making an initial determination of custody.

The district court carefully analyzed each of the 13 statutory factors in its June 18 order. Many of the factors were neutral, not favoring one parent over the other. The district court found that the children were more fully integrated into Williams's home and community, which included many extended family members. At the time of the custody hearing, Washington was living in a residential hotel. The district court concluded that Williams was the primary caretaker, continuing to parent when Washington failed to exercise his parenting time consistently. Williams stated, "When I'm sick as a parent

6

I'm still a parent[,] I still have to keep my kids. I don't call you and say would you take the kids, or I don't call somebody else and say can you keep my kids. I keep my kids at all times." The district court found that Williams had made considerable effort and sacrifice to keep the children at their private school and that this arrangement favored Williams as a custodial parent. While faulting both parents for not cooperating with each other and for involving the children in disputes about parenting time, the district court, in granting sole physical custody to Williams, stated:

> A significant factor which causes the court to reach this conclusion is that despite court orders permitting and strong encouragement from the court for [Washington] to spend equal time with the children, [he] has rarely, if ever, done so. He gives reasons to the court each time for failing to exercise his parenting time, but in the end he has not been there for the children. Children need their care provider to be there even when obstacles are thrown in the way.

Washington asserts that the court "manipulate[ed]" Williams's testimony to make her appear more favorable as a parent. We disagree. The district court's assessments were not wholly favorable to either parent, nor did the court base its decisions on Williams's religious beliefs (as alleged by Washington) except to note that the school reflected those beliefs. In essence, Washington argues that the district court should have decided issues in his favor. The decision, however, is fully supported by record evidence and the district court did not improperly apply the law. The decision to grant Williams sole physical custody was not an abuse of discretion.

**II.**

Washington next argues that the district court abused its discretion by ordering that the children continue to attend private school, and contends that because he has joint legal custody and provided most of the financial support, he should have been permitted to choose where the children attended school. He further asserts that this decision deprived him of his equal protection and due process rights under the federal constitution. As noted earlier, he offers no support for this assertion and we do not address it.

Under joint legal custody arrangements "both parents have equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing, including education, health care, and religious training." Minn. Stat. § 518.003, subd. 3(b) (2012). "Basic support" is defined to include "the dollar amount ordered for a child's housing, food, clothing, transportation, and education costs, and other expenses related to the child's care." Minn. Stat. § 518A.26, subd. 4 (2012).

Although Washington objects to paying for private school tuition, he is, in fact, not obligated to pay that tuition. Clearly, the district court ordered Williams "to be responsible for the children's tuition at school," and relieved Washington of the duty to pay private school tuition.[2]

When joint legal custodians cannot agree on schooling, the district court must consider the best interests of the child. *Novak v. Novak,* 446 N.W. 2d 422, 424 (Minn. App. 1989), *review denied* (Minn. Dec. 1, 1989). The district court did so here, noting

---

[2] Washington may be responsible for arrearages, however; in July 2011, he signed a contract with the school agreeing to pay one-half of the tuition.

8

that NDW was doing well in school, both children were comfortable with the school, the school has been a "good fit," the school was within walking distance, the school community provided "informal support" to the family, and the school reflected the family's "Christian values." Although Washington is not satisfied with the court's decision, it is supported by the court's findings of fact, which this court reviews for clear error. *Vangness v. Vangness*, 607 N.W.2d 468, 474 (Minn. App. 2000). A finding of fact is clearly erroneous if "an appellate court is left with the definite and firm conviction that a mistake has been made." *Goldman*, 748 N.W.2d at 284 (quotation omitted). An appellate court reviews the district court's decision in the light most favorable to the decision and defers to the district court's credibility determinations. *Vangness*, 607 N.W.2d at 474. Here, the district court's decision is based on the evidence and reflects a thorough consideration of the children's best interests. The district court did not abuse its discretion by ordering that the children continue to attend private school.

## III.

Washington also argues that the district court abused its discretion by denying his motion to permit the children to spend the summers and the Christmas holiday in Texas and by directing that parenting time occur only in Minnesota.[3] The district court's parenting-time decisions are reviewed for an abuse of discretion. *Hagen v. Schirmers*,

---

[3] Washington moved for parenting-time assistance. A parent may move for parenting-time assistance to review compliance with the district court's order. Minn. Stat. § 518.178 (2012). Washington is apparently asking for modification of a parenting time order, which is governed by Minn. Stat. § 518.175, subd. 5 (2012), rather than parenting-time assistance. A district court may modify an order for parenting time if the modification serves the best interests of the child. *Id.*; *In re Welfare of B.K.P.*, 662 N.W.2d 913, 916 (Minn. App. 2003).

783 N.W.2d 212, 215 (Minn. App. 2010). "A district court abuses that discretion by making findings unsupported by the evidence or improperly applying the law." *Id.* Parenting-time decisions must be based on the best interests of the child. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995) (discussing visitation under the former law).

The district court considered the best interests of the children in noting that Washington failed to exercise his parenting time after receiving the court's June 18 order, moved from Minnesota to Texas after voluntarily quitting his job, demonstrated "a history of inconsistent parenting time with the children especially when he disagrees with the findings of the court," and failed to provide information about his living situation in Texas, how the children would be accommodated, or a plan for the children's well-being while spending extended time in Texas. The district court's denial of Washington's motion for modification of parenting time was not an abuse of discretion.

**IV.**

Washington argues that the district court abused its discretion by not immediately assigning potential income to Williams, by deviating downwardly in the support guidelines as applied to her, and by denying his motion for a reduction in child support after he voluntarily quit his employment. We review the district court's child-support-modification orders for an abuse of discretion. *Haefele v. Haefele*, 837 N.W.2d 703, 708 (Minn. 2013). The district court abuses its discretion if its findings are unsupported by evidence or it misapplies the law. *Id.* "Whether a parent is voluntarily unemployed is a finding of fact, which [an appellate court] review[s] for clear error." *Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009).

10

In order to calculate child support, the district court must determine the parents' gross income. Minn. Stat. § 518A.34(b)(1) (2012). "Gross income" includes any periodic payments, including wages; salary; commissions; self-employment income; and retirement, pension, and disability payments; and so on. Minn. Stat. § 518A.29(a) (2012). "If a parent is voluntarily unemployed, underemployed, or employed on less than full-time basis, or there is no direct evidence of any income, child support must be calculated based on a determination of potential income." Minn. Stat. § 518A.32, subd. 1 (2012). Among other things, potential income can be based on earnings history. *Id.*, subd. 2(1) (2012). A parent is not voluntarily unemployed or underemployed if the situation is temporary and will lead to an increase in income, or if it represents a bona fide career change. *Id.*, subd. 3(1)-(2) (2012).

Washington does not dispute that at the time of the June 18, 2013 order he earned $3,000 per month, but argues that the district court abused its discretion by refusing to impute income to Williams until September 2013, despite the fact that she was working at least parttime. Washington appears to misread that order, attachments to which show that Williams's actual income was included in the child support calculation until September 1, and an additional $693 as potential income was recognized after September 1. Thus, Williams was assigned a total gross income of $1,386, as of September 1, 2013.

The district court found that Williams had recently graduated from school and was in the process of obtaining full employment. The court noted that she was gaining experience and clientele and that it was reasonable to expect her earnings to increase by

11

September 1, 2013. These findings support the district court's decision to refrain for several months from imputing income to Williams. This was not an abuse of discretion.

Washington also argues that the district court abused its discretion by refusing to deviate downwardly from the guidelines support amount,[4] and in ordering that Washington continue to pay guidelines support.[5] In refusing to deviate downwardly, the

---

[4] Minn. Stat. § 518A.43, subd 1 (2012), provides:

> [T]he court must take into consideration the following factors in setting or modifying child support or in determining whether to deviate upward or downward from the presumptive child support obligation:
> (1) all earnings, income, circumstances, and resources of each parent, including real and personal property, but excluding income from excess employment of the obligor or obligee that meets the criteria of section 518A.29, paragraph (b);
> (2) the extraordinary financial needs and resources, physical and emotional condition, and educational needs of the child to be supported;
> (3) the standard of living the child would enjoy if the parents were currently living together, but recognizing that the parents now have separate households;
> (4) whether the child resides in a foreign country for more than one year that has a substantially higher or lower cost of living than this country;
> (5) which parent receives the income taxation dependency exemption and the financial benefit the parent receives from it;
> (6) the parents' debts as provided in subdivision 2; and
> (7) the obligor's total payments for court-ordered child support exceed the limitations set forth in section 571.922.

[5] The monthly guidelines amounts before September 1, 2013, are $757 in basic support, $200 in child-care support, and $91 for medical support, for a total of $1048, and after September 1, $694 in basic support, $171 in child-care support, and $91 for medical support, for a total of $956.

12

district court also found that Washington had purchased a Hummer and obligated himself to a monthly $514 car payment, $320 for gas, and $185 for insurance, for a total of $1,019 per month.

Washington argues that the district court abused its discretion by considering his private purchases. We disagree. The court may consider not only a party's earnings, income, and resources, but also "circumstances." Minn. Stat. § 518A.43, subd. 1(1). The district court's findings are supported by the evidence and its decision not to deviate downwardly was not an abuse of discretion.

Washington also argues that because he is now unemployed, there has been a change in circumstances that permits a modification of child support. The district court may modify a support order "upon a showing of . . . substantially increased or decreased gross income of an obligor." Minn. Stat. § 518A.39, subd. 2(a)(1) (2012). There is a presumption of a substantial change in circumstances if "the gross income of an obligor . . . has decreased by at least 20 percent *through no fault or choice of the party*." *Id.*, subd. 2(b)(5) (2012) (emphasis added). The party requesting modification has the burden of proving a change in circumstances. *County of Grant v. Koser*, 809 N.W.2d 237, 241 (Minn. App. 2012).

Here, the district court found that Washington had voluntarily quit his employment, had moved to Texas, had not demonstrated an inability to work or impairment of his earning capacity, and "has not provided any documentation of medical condition/reason to prevent him from being employed nor has he provided any documentation regarding his search for gainful employment, lack of employment or

13

inability to obtain gainful employment." Washington's income did not decrease through no fault of his own. Therefore, the modification presumption does not apply to Washington and he has not sustained his burden of proving a change in circumstances.

"If a parent is voluntarily unemployed . . . child support must be calculated based on a determination of potential income." Minn. Stat. § 518A.32, subd. 1. A court may determine potential income by "the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community." *Id.*, subd. 2(1). The district court found no "reason to deviate or depart" from its prior child support order, at least implicitly finding that Washington's potential income was his previous income. There was no abuse of discretion in the decision of the district court to continue Washington's child support at its June 2013 level.

## V.

Washington argues that the district court was biased because it did not reprimand Williams when she failed to produce documents or when she deprived him of parenting time, and because the court accepted the testimony of Williams and rejected that of Washington regarding parenting time.

A judge may not preside over a proceeding if he or she is not impartial, including instances in which a judge has a "personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." *State v. Burrell*, 743 N.W.2d 596, 601 (Minn. 2008) (quotation omitted). Mere dissatisfaction with the outcome of a proceeding does not necessarily indicate

14

partiality or bias. *Id.* at 602. "A primary consideration is whether any claimed misconduct [by the district court] is so serious that it denies the litigants a fair trial." *Uselman v. Uselman*, 464 N.W.2d 130, 139 (Minn. 1990).

Washington did not seek court sanctions or enforcement orders for deprivation of parenting time. "On appeal, a party cannot complain about a district court's failure to rule in [his] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question." *Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003).

Our thorough review of the transcripts and the rest of the record reveals that both parties were treated respectfully. Washington's requests were upheld over Williams's objections at roughly the same rate as those requests were denied. We observe no evidence of bias in the record.

**Affirmed.**