*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-0964**

In re the Custody of BJL (DOB 1/8/2018),

Nicholas T. White, petitioner,
Appellant,

vs.

Adrianna L Loesch,
Respondent,

County of Dakota,
Respondent.

**Filed December 26, 2023**
**Affirmed**
**Johnson, Judge**

Dakota County District Court
File No. 19WS-FA-18-1373

Brian K. Lewis, Francis White Law, P.L.L.C., Woodbury, Minnesota (for appellant)

Kathryn M. Keena, Dakota County Attorney, Lisa D. Kontz, Assistant County Attorney, West St. Paul, Minnesota (for respondent Dakota County)

Adrianna L. Loesch, Hastings, Minnesota (*pro se* respondent)

        Considered and decided by Johnson, Presiding Judge; Larkin, Judge; and Frisch, Judge.

**JOHNSON**, Judge

Nicholas T. White and Adrianna L. Loesch are the parents of a five-year-old child. Loesch moved to modify White's child-support obligation, which had been $50 per month. After an evidentiary hearing, a child-support magistrate (CSM) granted the motion and increased White's basic child-support obligation to $217 per month. We conclude that the CSM did not err by finding that White is voluntarily unemployed and by imputing income to him, did not decide any issue that is beyond the scope of an expedited child-support proceeding, and did not err by allowing a party to call White as a witness at the evidentiary hearing. Therefore, we affirm.

## FACTS

White and Loesch have one joint minor child, a boy who was born in January 2018. Shortly after his birth, the parents executed a voluntary recognition of parentage.

In December 2018, White petitioned the district court to establish his right to custody and parenting time. Dakota County intervened because it was providing financial assistance and child-support services to Loesch. *See* 42 U.S.C. § 654(4) (2022) (Title IV-D); Minn. Stat. § 518A.49(b) (2022). In June 2019, the parents and the county stipulated that White and Loesch would share joint legal custody and joint physical custody, that White would have regular parenting time on alternating weekends, and that White would pay Loesch $50 per month in basic child support.

In February 2022, Loesch filed a *pro se*, handwritten motion to modify White's child-support obligation. In an affidavit, she stated that her childcare-related expenses had

increased, in part because the child was attending daycare five days per week and pre-school on parts of two days per week.

With the assistance of counsel, White opposed the motion. In an affidavit, he stated that he is unemployed but intends to start an audio-installation business and to enroll in a community college to pursue a degree in criminal justice. He also submitted an affidavit executed by his mother, a registered nurse, who stated that he was diagnosed with ADHD at the age of four and more recently was diagnosed with PTSD.

In April 2022, the CSM conducted an evidentiary hearing. White testified that, as a result of his mental-health diagnoses, he is unable to work for anyone but himself. White also testified that he was in the process of conducting market research for an audio-installation business but had not done any work for customers. He further testified that he intends to become a part-time sheriff after he obtains the necessary degree.

In May 2022, the CSM filed an order granting Loesch's motion. The CSM found that White's unemployment is not due to a physical or mental incapacity, that he is voluntarily unemployed, and that his income for purposes of child support should be based on his potential income. Based on White's employment and earnings between 2016 and 2021, the CSM found that he could work at least 30 hours per week and could earn $14.50 per hour, resulting in potential income of $1,884 per month. The CSM also found that Loesch's gross income is $3,544 per month.

The parental-income-for-child-support (PICS) formula would result in a basic child-support obligation of $270 per month. The CSM applied a self-support reserve and found

3

that White has only $217 per month available for child support. Accordingly, the CSM increased his basic child-support obligation to $217 per month. White appeals.

## DECISION

White argues that the CSM erred by granting Loesch's motion to modify his child-support obligation. He makes three arguments, which we address in turn.

### I. Potential Income

White first argues that the CSM erred by finding that he is voluntarily unemployed and that he has potential income.

An existing child-support obligation may be modified if a substantial change in circumstances makes the existing obligation unreasonable and unfair. Minn. Stat. § 518A.39, subd. 2(a) (2022). The moving party bears the burden of showing both a substantial change in circumstances and that the substantial change makes the existing obligation unreasonable and unfair. *Bormann v. Bormann*, 644 N.W.2d 478, 480-81 (Minn. App. 2002).

To determine the existence and amount of a basic child-support obligation, a district court must determine the gross income of each parent. Minn. Stat. §§ 518A.29, .34(a), (b)(1) (2022). For child-support purposes, a parent's gross income includes "any form of periodic payment to an individual, including, but not limited to, salaries, wages, commissions, self-employment income under section 518A.30 . . . *and potential income under section 518A.32*." Minn. Stat. § 518A.29(a) (emphasis added).

A district court may find that a parent has potential income if the parent "is voluntarily unemployed, underemployed, or employed on a less than full-time basis, or

4

there is no direct evidence of any income." Minn. Stat. § 518A.32, subd. 1 (2022). But a parent "is not considered voluntarily unemployed, underemployed, or employed on a less than full-time basis" if such a status exists "because a parent is physically or mentally incapacitated." *Id.*, subd. 3, 3(3). This court applies a clear-error standard of review to a finding that a parent is voluntarily unemployed. *Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009).

If it is necessary to determine the amount of a parent's potential income, a district court must do so based on one of three methods:

> (1) the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community;

> (2) if a parent is receiving unemployment compensation or workers' compensation, that parent's income may be calculated using the actual amount of the unemployment compensation or workers' compensation benefit received; or

> (3) the amount of income a parent could earn working 30 hours per week at 100 percent of the current federal or state minimum wage, whichever is higher.

Minn. Stat. § 518A.32, subd. 2. This court applies a clear-error standard of review to a finding of a parent's potential income. *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015), *rev. denied* (Minn. Dec. 15, 2015).

In this case, White contends that the CSM erred by rejecting his evidence and argument that he is unemployed because of his mental-health diagnoses. White's contention is unpersuasive because his evidence does not show that he is unable to work

5

because of his mental-health diagnoses. White stated in an affidavit that he recently was employed and that his employment ended for reasons unrelated to his mental health. He also stated that he intends to become employed again in the near future and that he intends to further his education for the purpose of obtaining employment. At the evidentiary hearing, he did not testify that he was unable to work; he testified merely that he could not work for anyone but himself. But that testimony is inconsistent with his testimony that he hopes to become a part-time sheriff. Given this evidence, the CSM did not clearly err by finding that White's unemployment is not the result of a physical or mental incapacity.

White also contends that the CSM erred by not making favorable findings based on the affidavit of his mother. Specifically, White asserts that the CSM disregarded his mother's affidavit because she is a nurse, not a physician. We do not interpret the CSM's order to have discounted White's mother's affidavit for that reason. The CSM reasoned that "an affidavit from a parent does not hold the weight of an independent medical opinion," which indicates that the CSM gave White's mother's affidavit less weight because she likely has a natural bias or interest in favor of her own child. The CSM also reasoned that White's mother's affidavit does not "provide the detailed information normally needed" to establish that a parent's unemployment is due to a physical or mental incapacity. That statement is a fair comment on the affidavit, which is quite general in its descriptions of White's condition, relies in part on a diagnosis made decades earlier, and does not state that White cannot be employed. The CSM did not clearly err in her consideration of White's mother's affidavit.

White further contends that the CSM erred in calculating his potential income. The CSM referred to his average hourly wage during the prior five-year period. White contends that the CSM did not comply with the potential-income statute on the ground that the CSM selected an hourly rate that is higher than the minimum wage. White is incorrect in his interpretation of the statute. A district court may determine potential income by any of three methods, "as appropriate." Minn. Stat. § 518A.32, subd. 2. The third method is to determine the amount of income a parent could earn by working 30 hours per week at minimum wage. *Id.*, subd. 2(3). But the first method is to determine "the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community." *Id.*, subd. 2(1). In this case, the CSM used the first method. It was not inappropriate for the CSM to rely on White's recent work history because he had earned hourly wages that exceed the minimum wage. In his most recent job, he earned an hourly wage of $19.45, which is nearly five dollars more than the hourly wage that the CSM imputed to him. The CSM's finding of White's potential income is authorized by the potential-income statute and is not clearly erroneous in its amount.

Thus, the CSM did not err by finding that White is voluntarily unemployed and by finding that he has potential income of $1,884 per month.

## II. Scope of Expedited Proceeding

White also argues that the CSM erred by deciding an issue that is beyond the scope of an expedited child-support proceeding when the CSM made a ruling related to the child's attendance at a pre-school.

7

In response to Loesch's argument that her childcare expenses had increased, White argued that the expenses were unnecessary because he (in the CSM's words) "could care for the joint child and avoid all childcare costs" due to his unemployment and that "pre-school is voluntary." The CSM resolved those arguments by stating, in relevant part:

> The child is attending pre-school during hours when they would normally need childcare. Pre-school is in the best interest of the child and is not extraordinary or unreasonable. The respondent testified that pre-school is necessary as the child is somewhat behind in learning and needs pre-school to be ready for school.

White contends that, in making these statements, the CSM "decided an issue about the education of the child, not daycare," which is an issue for which a CSM "does not have jurisdiction" in an expedited child-support proceeding.

A child-support-enforcement action in which a county has joined pursuant to Title IV-D shall proceed in an expedited process. *See* Minn. R. Gen. Prac. 353.01, subd. 1; *see also* Minn. R. Gen. Prac. 351-379. In such a proceeding, a CSM "has authority to establish, modify, and enforce child support," *Brazinsky v. Brazinsky*, 610 N.W.2d 707, 710 (Minn. App. 2000), but may not decide issues related to the "establishment, modification, or enforcement of custody or parenting time," Minn. R. Gen. Prac. 353.01, subd. 3. If an issue of custody or parenting time is raised by a pleading or a motion, the CSM must refer it to the district court. Minn. R. Gen. Prac. 353.02, subd. 3.

In some circumstances, the selection of a child's school may be an issue of custody. Ordinarily, a child's school is to be determined by a child's legal custodian or custodians. *See* Minn. Stat. § 518.003, subd. 3(a) (2022) (defining "legal custody" to mean "the right

8

to determine the child's upbringing, including education, health care, and religious training"). If two parents share joint legal custody, they "have equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing, including education." Minn. Stat. § 518.003, subd. 3(b); *see also Wolf v. Oestreich*, 956 N.W.2d 248, 253 (Minn. App. 2021), *rev. denied* (Minn. May 18, 2021). If joint legal custodians are unable to agree on the selection of a school, the matter may be submitted to a district court, which shall decide the issue according to the best interests of the child. *Novak v. Novak*, 446 N.W.2d 422, 424-25 (Minn. App. 1989), *rev. denied* (Minn. Dec. 1, 1989). This court has concluded, in a non-precedential opinion, that "decisions regarding who should provide daycare for a child are not decisions concerning a child's education, in which joint legal custodians have an equal right to participate." *Horsman v. Horsman*, No. C5-02-2254, 2003 WL 21386433, *1 (Minn. App. June 17, 2003). We are unaware of any precedential caselaw on that issue or any caselaw concerning whether pre-school is equivalent to daycare or, conversely, is deemed to be a matter of education.

In any event, the record makes clear that neither party raised an issue of either custody or parenting time in this matter. Loesch sought to increase White's child-support obligation so that she could better afford the expenses of the child's enrollment in daycare five days per week and pre-school on two half-days each week. White argued, in part, that those expenses were unnecessary because he was available to care for the child in lieu of daycare and pre-school. During the evidentiary hearing, the county's attorney objected to White's cross-examination of Loesch on the ground that White's parenting time was beyond the scope of an expedited proceeding. In response, White's attorney took pains to

9

say that he was not raising an issue of parenting time, "so the child support magistrate still has jurisdiction." The CSM clarified that no ruling concerning parenting time would be made. Likewise, neither party asked the CSM to rule on whether the child should or should not attend pre-school, and White did not argue that the child's attendance at pre-school violated his equal right as a joint legal custodian to determine the child's education. It is unclear why the CSM made statements concerning the reasonableness or necessity of pre-school. But such comments did not go beyond the scope of the expedited child-support-enforcement proceeding because the CSM did not make any prospective ruling as to whether the child should or should not attend pre-school.

Thus, the CSM did not decide an issue that is beyond the scope of an expedited child-support proceeding.

### III. White's Testimony

White last argues that the CSM erred by requiring him to testify at the evidentiary hearing.

The first witness at the hearing was a county child-support specialist, who was examined by the county's attorney and cross-examined by White's attorney. The second witness was Loesch, who was examined by the CSM and by White's attorney. White's attorney then took the opportunity to present oral argument in opposition to Loesch's motion. When White's attorney had concluded his argument, the CSM asked the county's attorney whether she had any questions for White. White's attorney objected, stating that White had not been called as a witness and that the county had rested its case after presenting one witness. The CSM overruled the objection, explaining that the county had

not rested and that the county's attorney "can call Mr. White as a witness if she would like." Following the CSM's ruling, White was examined by the county's attorney, his own attorney, and the CSM.

White contends that the CSM erred on the ground that she called him as a witness and then "tendered" him to the county. Specifically, White contends that the CSM violated rule 614(a) of the rules of evidence. That rule expressly authorizes a district court to call a witness: "The court may, on its own motion or at the suggestion of a party, call witnesses . . . ." Minn. R. Evid. 614(a). White nonetheless contends that the CSM erred by assuming the role of an advocate and providing assistance to the county. He cites a comment to rule 614, which states, "The right to call and question witnesses can be abused by the trial court which assumes an advocate's position . . . ." Minn. R. Evid. 614, 1977 comm. cmt. But rule 614 does not apply because the CSM did not call White as a witness. Rather, White was called by the county. After White's attorney said, "I have nothing further, your honor," the CSM addressed the county's attorney and said, "any questions . . . for Mr. White?" The CSM's statement appears to be a routine and ordinary means of making a transition when presiding over an evidentiary hearing. Nothing in the record of the hearing gives any indication that the CSM became an advocate for the county.

The county's right to call White as a witness is made clear by a rule governing expedited child-support-enforcement proceedings, which provides, "A party may call an adverse party or any witness for an adverse party, and may ask leading questions, cross-examine, and impeach that adverse party or witness." Minn. R. Gen. Prac. 364.12. The CSM asked follow-up questions of White after the county's attorney and his own attorney

11

had completed their examinations. The CSM's questioning of White is expressly authorized by a rule that provides, "A child support magistrate may ask questions of witnesses when needed to ensure sufficient evidence to make the required findings." Minn. R. Gen. Prac. 364.13.

Thus, the CSM did not err by allowing the county to call White as a witness at the evidentiary hearing.

In sum, the CSM did not err by granting Loesch's motion to modify White's child-support obligation.

**Affirmed.**